# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (DAYTON)

DAVID T.,[1]                              :   Case No. 3:24-cv-00068
:
      Plaintiff,                    :   Magistrate Judge Caroline H. Gentry
:   (by full consent of the parties)
vs.                                      :
:
COMMISSIONER OF THE SOCIAL               :
SECURITY ADMINISTRATION,                 :
:
      Defendant.                     :

---

# DECISION AND ORDER

---

Plaintiff filed an application for Supplemental Security Income (SSI) on July 26, 2021. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.      BACKGROUND

Plaintiff asserts that he has been under a disability since June 1, 2021.[2] He was sixty years old on the SSI application date. Accordingly, Plaintiff was considered "closely approaching retirement age" under the applicable regulation. 20 C.F.R. § 416.963(e). Plaintiff has a "high school education." 20 C.F.R. § 416.964(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 38-54), Plaintiff's Statement of Errors ("SE," Doc. No. 8), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 10), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.     STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

---

[2] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case begins on July 26, 2021. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 F. App'x. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [the plaintiff] filed his protective application.").

2

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.  FACTS

### A.  The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered the sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1:  Plaintiff has not engaged in substantial gainful activity since July 26, 2021, the SSI application date.

Step 2:  He has the following medically determinable impairments: personality disorder, depressive disorder, substance abuse disorder, osteonecrosis, and chronic obstructive pulmonary disease.

Plaintiff does not have an impairment or combination of impairments that has significantly limited (or is expected to

4

> significantly limit) the ability to perform basic work-related
> activities for twelve consecutive months. Therefore, Plaintiff does
> not have a severe impairment or combination of impairments.

(Decision, Doc. No. 7-2 at PageID 43-50.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 50.)

### B.    The ALJ's Evaluation Of Plaintiff's Physical Impairments

The ALJ found that Plaintiff's osteonecrosis and chronic obstructive pulmonary

disease (COPD) are nonsevere. (Decision, Doc. No. 7-2 at PageID 43.) The ALJ

explained that he considered the basic work activities that are necessary to do most jobs

and evaluated Plaintiff's subjective complaints, the objective medical evidence, and the

medical opinion evidence. (*Id.* at PageID 43-46.) The ALJ concluded that Plaintiff's

physical impairments, both on their own and in combination, do not significantly limit

Plaintiff's ability to perform basic work activities. (*Id.* at PageID 43-44.)

The ALJ first summarized Plaintiff's subjective complaints in a September 2021

Function Report and Plaintiff's testimony at the December 2022 hearing. (*Id.* at PageID

44.) Next, the ALJ summarized the physical examination findings and Plaintiff's reports

of limitations and abilities that were documented in the treatment notes from various

providers. (*Id.* at PageID 45-46.) The ALJ concluded:

> In summary of the medical evidence, [Plaintiff] has been diagnosed with
> osteonecrosis and chronic obstructive pulmonary disease. During the
> period, [Plaintiff] presented to the emergency department for medical care.
> He failed to seek treatment through regular outpatient provider
> appointments. His only regular medication was an albuterol inhaler, and
> that was prescribed on an 'as needed' basis. His physical exams were
> routinely normal. Though he complained of shortness of breath, he

appeared to have no difficulty ambulating and was not dyspneic during any exam. His lungs were routinely found to be clear without wheezing, rales, or rhonchi. [Plaintiff] testified that he has recovered from his hernia surgery. There are several references in the record to [Plaintiff] performing construction work. [Plaintiff] denied this, and I do not find that [Plaintiff] did perform construction work during the relevant period, but the objective evidence on this point further undermines a finding that his statements on his abilities are consistent. Accordingly, I find that [Plaintiff] has no severe physical impairments.

(*Id.* at PageID 46.)

## C.    State Agency Medical Consultants

State agency medical consultant W. Scott Bolz, M.D. completed a Disability Determination Explanation form in December 2021. (AR, Doc. No. 7-3 at PageID 84-89.) After summarizing the evidence reviewed (*id.* at PageID 85-86), Dr. Bolz concluded that Plaintiff's osteoarthrosis and COPD were severe. (*Id.* at PageID 86). In the Symptoms Evaluation section of the form, Dr. Bolz stated that Plaintiff's alleged symptoms were "[p]artially consistent" with the "total medical and non-medical evidence" of record. (*Id.* at PageID 87-88.) He explained:

[Plaintiff] reports hip pain and [shortness of breath]. While he does have some degenerative changes in his [right] hip and is on med[ications] for COPD, he showed no pain behaviors or [shortness of breath] during [the consultative examination]. His [range of motion] and strength were normal with no hip tenderness on exam. Gait normal.

(*Id.* at PageID 88.) Dr. Bolz also addressed the medical opinion of consultative physician Phillip Swedberg, M.D. and concluded that the opinion was not "more restrictive than the findings." (*Id.*) According to Dr. Bolz: "The opinion from Dr. Swedberg is somewhat persuasive. However, it appears [Plaintiff] does have [a history] of some COPD due to the med[ications] he is on so some environmental limitations would be appropriate." (*Id.*)

6

In the physical RFC section of the form, Dr. Bolz opined that Plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk for a total of approximately six hours in an eight-hour workday, and sit for approximately six hours in an eight-hour workday. (AR, Doc. No. 7-3 at PageID 88-89.) Dr. Bolz opined that Plaintiff could frequently climb ramps or stairs, kneel, crouch, and crawl and only occasionally stoop and climb ladders, ropes, or scaffolds. (*Id.* at PageID 89.) Dr. Bolz also opined that Plaintiff needed to avoid even moderate exposure to hazards, as well as concentrated exposure to extreme cold, extreme heat, humidity, and irritants such as fumes, odors, dusts, gases, and poor ventilation. (*Id.*) When asked to explain the limitations that he assessed, Dr. Bolz wrote: "[Plaintiff] is on med[ications] for COPD but recent [pulmonary function study], though invalid, found no sig[nificant] findings. [X-rays of the right] hip show mod[erate] [osteoarthritis] and chronic osteonecrosis. Has 5/5 strength with [full range of motion] throughout. Intact [deep tendon reflexes] and sensation. Gait normal." (*Id.*)

Mehr Siddiqui, M.D. reviewed the updated record and completed a Disability Determination Explanation form at the reconsideration level in June 2022. (AR, Doc. No. 7-3 at PageID 94-98.) After summarizing the evidence (*id.* at PageID 94), Dr. Siddiqui concurred with Dr. Bolz's conclusions that Plaintiff's osteoarthrosis and COPD were severe and that Plaintiff's reported symptoms appeared partially consistent with the medical evidence. (*Id.* at PageID 95-96.) Dr. Siddiqui also concurred with and adopted the exertional and non-exertional limitations identified by Dr. Bolz. (*Id.* at PageID 97-98.) He cited Dr. Bolz's explanation and further explained: "The prior administrative

7

medical findings from the initial level have been reviewed and are found to be consistent with and supported by the totality of evidence available in file, including the updated evidence received at the reconsideration level." (*Id.* at PageID 98.)

The ALJ found that Dr. Bolz's and Dr. Siddiqui's opinions were "unpersuasive" because "the evidence does not support a severe physical impairment." (Decision, Doc. No. 7-2 at PageID 48.) According to the ALJ, the consultants' opinions were "supported by the doctors' review of the medical evidence available to them at the time of the rendering of their opinion[s]" but were "inconsistent with the remainder of the medical evidence." (*Id.*) The ALJ supported his reasoning by citing to three examinations:

> The medical evidence indicates that [Plaintiff] exhibited good range of motion in all major joints. There was no tenderness to palpation or major deformities noted. There was no edema, tenderness, or cyanosis in the extremities. His neck was supple with no tenderness and normal range of motion. There was no tenderness in his back (Ex. 2F/6). He exhibited normal speech. There was no facial droop and no nystagmus. His motor strength was 5/5 and symmetrical bilaterally in the upper and lower extremities. His sensory exam was intact throughout. His lungs were clear to auscultation bilaterally without rhonchi, wheezes, or rales (Ex. 8F/8). His grip strength was 5/5 bilaterally. His range of motion was normal throughout his body. His gait and station were normal. Straight leg raising was negative (Ex. 3F).

(*Id.* (citing AR, Doc. No. 7-7 at PageID 314, 373-80, 523).) The ALJ concluded: "Thus, the evidence supports the opinion of Drs. Bolz and Siddiqui, and a finding of no severe physical impairment." (*Id.*)

### D.    Phillip Swedberg, M.D.

Phillip Swedberg, M.D. performed a consultative physical examination in November 2021. (AR, Doc. No. 7-7 at PageID 373-81.) Dr. Swedberg opined that

Plaintiff was capable of performing a "moderate amount" of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. He opined that Plaintiff had no difficulty with reaching, grasping, and handling objects, and that Plaintiff had no visual, communicative, or environmental limitations. (*Id.* at PageID 380.)

The ALJ concluded that Dr. Swedberg's opinion was "only partially persuasive." (Decision, Doc. No. 7-2 at PageID 47.) The ALJ explained that the opinion was "not completely supported" by Dr. Swedberg's examination, which did "not reveal a need for any limitations given the completely normal results of the examination." (*Id.*) The ALJ also reasoned that the opinion was "inconsistent with the remainder of the medical evidence." (*Id.*) The ALJ then cited the same two examinations that he cited when he discounted the state agency medical consultants' opinions:

> [The evidence] indicates that [Plaintiff] exhibited normal breath sounds and was in no respiratory distress. He exhibited good range of motion in all major joints. There was no tenderness to palpation or major deformities noted. There was no edema, tenderness, or cyanosis in the extremities. His neck was supple with no tenderness and normal range of motion. There was no tenderness in his back (Ex. 2F/6). He exhibited normal speech. There was no facial droop and no nystagmus. His motor strength was 5/5 and symmetrical bilaterally in the upper and lower extremities. His sensory exam was intact throughout. His lungs were clear to auscultation bilaterally without rhonchi, wheezes, or rales (Ex. 8F/8).

(*Id.* at PageID 47-48.) The ALJ concluded: "Thus, the evidence supports a finding of no severe physical impairment." (*Id.* at PageID 48.)

## IV. LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred because he improperly evaluated his physical impairments and found that they were nonsevere. (SE, Doc. 8 at PageID 622-24.)

9

Plaintiff further alleges that the ALJ's analyses of the opinions of the state agency medical consultants and consultative physician Dr. Swedberg are unsupported by substantial evidence. (*Id.* at PageID 624-28.) Finally, Plaintiff argues that the ALJ erred because he "ma[de] a decision with no reasonable foundation in creditable medical opinion." (*Id.* at PageID 629-31.) For the reasons discussed below, the undersigned finds that Plaintiff's first two assertions are well-taken and the ALJ's decision shall therefore be reversed and remanded. The Court does not address Plaintiff's other alleged error and instead instructs the ALJ to address it on remand.

### A. The ALJ Reversibly Erred In His Analysis Of Plaintiff's Physical Impairments.

#### 1. Applicable law

An ALJ evaluates the "medical severity" of a claimant's impairments at Step Two of the sequential evaluation. 20 C.F.R. § 416.920(a)(4)(ii.) An impairment or combination of impairments is "severe" if it "significantly limits [an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "Basic work activities" include the abilities and aptitudes necessary to perform most jobs, such as the abilities to carry out simple instructions, use judgment, respond to supervisors and coworkers, and deal with changes in a routine work setting. 20 C.F.R. § 416.922(b). Conversely, an impairment or combination of impairments is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities

10

which would have no more than a minimal effect on an individual's ability to work . . . ." Social Security Ruling (SSR) 85-28, 1985 WL 56856, at *3 (January 1, 1985).[3]

The claimant bears the burden of showing both that he has a severe impairment, and that the impairment meets the twelve-month duration requirement. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)); *cf.* 20 C.F.R. § 416.920(a)(4)(ii). To meet the duration requirement, an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909; *Harley*, 485 F. App'x at 803.

Notably, the claimant's burden of establishing a "severe" impairment at Step Two is a "*de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The goal of the test is to "screen out totally groundless claims." *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). "Under [this] prevailing *de minimis* view, an impairment can be considered not severe only if it is ***a slight abnormality*** that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862 (emphasis added).

      **2.**     **The ALJ failed to build a logical bridge between the medical evidence and his conclusion that Plaintiff's physical impairments are nonsevere.**

The ALJ provided a detailed summary of the medical records that documented Plaintiff's treatment for his physical complaints. (Decision, Doc. No. 7-2 at PageID 45-46.) The ALJ stated that several physical examinations showed normal findings. (*Id.*) He

---

[3] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

acknowledged that Plaintiff was prescribed an Albuterol inhaler for COPD but did not use nebulizers, oxygen, or prednisone. (*Id.* at PageID 46.) The ALJ also commented that Plaintiff had never been seen by a pulmonologist. (*Id.*) The ALJ cited right hip x-rays taken during the November 2021 consultative physical examination that showed chronic osteonecrosis of the right femoral head with moderate osteoarthritis of the right hip (*Id.*) He also acknowledged that Plaintiff presented to the Samaritan Homeless Clinic in August 2022 with complaints of worsening hip pain, and that the physical examination showed decreased range of motion of the right hip. (*Id.*)

The ALJ concluded his summary of the medical evidence by commenting that despite diagnoses of osteonecrosis and COPD, Plaintiff "presented to the emergency department for medical care" and "failed to seek treatment through regular outpatient provider appointments." (Decision, Doc. No. 7-2 at PageID 46.) The ALJ noted that Plaintiff's only "regular" medication, an Albuterol inhaler, was prescribed on an as-needed basis. (*Id.*) The ALJ explained that physical examinations were "routinely normal" and did not document findings that were consistent with Plaintiff's complaints of shortness of breath. (*Id.*) The ALJ also commented that although the record contained references to Plaintiff performing construction work, Plaintiff denied doing so. (*Id.*) The ALJ reasoned: "I do not find that [Plaintiff] did perform construction work during the relevant period, but the objective evidence on this point further undermines a finding that his statements on his abilities are consistent." (*Id.*) The ALJ relied on these suppositions to conclude that Plaintiff's physical impairments are nonsevere. (*Id.*)

12

The Court acknowledges that an ALJ's decision "need not be so comprehensive as to account with meticulous specificity for each finding and limitation, nor is the ALJ required to discuss every piece of evidence in the record." *Correa v. Comm'r of Soc. Sec.*, No. 1:23-cv-685, 2023 U.S. Dist. LEXIS 231766, at \*31 (N.D. Ohio Dec. 14, 2023) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Nevertheless, the ALJ's "factual findings as a whole" must show that he "implicitly resolved the conflicts in the evidence." *Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). The ALJ must also "provide sufficient explanation for the claimant and any reviewing court to 'trace the path of his reasoning'" and explain "with specificity" how the evidence supports the RFC limitations. *Correa*, 2023 U.S. Dist. LEXIS 231766, at \*31-32 (citing *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011); *Bailey v. Comm'r of Soc. Sec.*, No. 98-3061, 1999 U.S. App. LEXIS 1621, at \*12 (6th Cir. Feb, 2, 1999); *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-cv-564, 2011 U.S. Dist. LEXIS 11925, at \*12 (S.D. Ohio Feb. 8, 2011)).

The Court concludes that the ALJ's analysis is erroneous because the ALJ did not build the required logical bridge between his summary of the medical evidence and his conclusion that the evidence fails to support the claimed severity of Plaintiff's physical impairments. The ALJ relied heavily on his reasoning that Plaintiff's physical impairments are nonsevere because of the "routinely normal" physical examination findings and because Plaintiff sought emergency room treatment for his medical care. (Decision, Doc. No. 7-2 at PageID 46.) But he ignored significant evidence that supports

13

the opposite conclusion. For example, although the ALJ cited the August 2022 Samaritan Homeless Clinic visit in his summary of the medical evidence, he ignored this visit—and the clinician's observation that Plaintiff exhibited decreased range of motion of the right hip (AR, Doc. No. 7-7 at PageID 492)—when he concluded that Plaintiff only sought emergency room treatment and that his physical examinations were routinely normal. (Decision, Doc. No. 7-2 at PageID 46).

Likewise, the ALJ cited the November 2021 right hip x-rays in his medical evidence summary, but he did not explain how this imaging—which showed chronic osteonecrosis of the right femoral head with ***moderate*** osteoarthritis of the right hip (AR, Doc. No. 7-7 at PageID 382 (emphasis added))—supports his conclusion that Plaintiff's hip condition causes no more than a slight abnormality. (Decision, Doc. No. 7-2 at PageID 46.) Significantly, the x-ray findings were confirmed by a November 2021 CT scan of the abdomen and pelvis (taken following Plaintiff's hernia surgery) which showed subchondral sclerosis and cystic changes of the right hip. (AR, Doc. No. 7-7 at PageID 575.) The imaging additionally showed serpiginous sclerosis of the right femoral head which was concerning for osteonecrosis, as well as moderate listhesis of L5 on S1. (*Id.*) Right hip x-rays taken almost a year later in October 2022 also showed degenerative changes of the right hip joint, specifically chronic deformity of the right femoral head and right hip joint space narrowing with sclerosis. (*Id.* at PageID 610.) The ALJ did not mention any of this imaging in his conclusory paragraph that explained why he found that Plaintiff's physical impairments were nonsevere.

Defendant argues that the ALJ's decision cannot be reversed merely because "there might be substantial evidence in the record that supports a different conclusion." (Mem. In Opp., Doc. No. 10 at PageID 642 (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 282 (6th Cir. 2009).) This argument misses the mark. It is true that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen*, 800 F.2d at 545; *see also White*, 572 F.3d at 282. But here, the ALJ's failure to build a logical bridge between the cited evidence and his conclusions prevents the Court from engaging in meaningful judicial review. *See Blakley*, 581 F.3d at 409 (citing *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004)). Additionally, given that any impairment that is more than a "slight abnormality" should be considered severe, the undersigned finds that the ALJ's conclusions are not supported by substantial evidence.

### 3. The ALJ's error is not harmless.

When determining a claimant's RFC, an ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Typically, if an ALJ finds at least one severe impairment, then a failure to find additional severe impairments at Step Two "[does] not constitute reversible error" if the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination." *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007), citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir.1987). In other words, as long as the ALJ "finds at least one severe impairment and analyzes all impairments in the following steps, the characterization of

other impairments as severe or non-severe is 'legally irrelevant.'" *Deaner v. Comm'r. of Soc. Sec.*, 840 F. App'x 813, 817 (6th Cir. 2020) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).

However this harmless error rule does not apply because the ALJ did not find *any* severe impairments at Step Two. The ALJ therefore did not proceed to the next steps of the sequential evaluation and did not assess any RFC limitations. Therefore, the Court finds that the ALJ's error was not harmless because it prejudiced Plaintiff on the merits. *Rabbers*, 582 F.3d at 651. Accordingly, reversal and remand is warranted.

**B.     The ALJ Reversibly Erred In His Analysis Of The Medical Opinion Evidence.**

**1.     Applicable law**

ALJs are required to analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 416.920c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 416.913(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 416.920b(c)(3).

Because Plaintiff filed his claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R.

16

§ 416.920c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 416.920c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v.*

17

*Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from *other* providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-672, 2024

U.S. Dist. LEXIS 49191 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, *6 (S.D. Ohio Mar. 24, 2023)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[4] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 416.920c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13,

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

### 2. The ALJ's evaluation of the state agency medical consultants' findings is unsupported by substantial evidence.

The ALJ stated that he was unpersuaded by the state agency medical consultants' findings that Plaintiff was limited to a reduced range of light exertion. (Decision, Doc. No. 7-2 at PageID 48.) He reasoned that although the consultants' opinions were supported by their "review of the medical evidence available to them at the time," they were "inconsistent with the remainder of the evidence," which did "not support a severe physical impairment." (*Id.*) With these statements, the ALJ arguably explained his consideration of the supportability and consistency factors as required by 20 C.F.R. § 416.920c(b)(2). However, the ALJ's conclusions regarding the consistency factor are unsupported by substantial evidence.

To support his conclusion that the consultants' opinions were "inconsistent with the remainder of the medical evidence," the ALJ cited normal findings from three physical examinations. (Decision, Doc. No. 7-2 at PageID 48.) However, the evidence cited by the ALJ does not substantially support his conclusion. The ALJ first cited to a

20

physical examination documented in Exhibit 2F. (Decision, Doc. No. 7-2 at PageID 48 (citing AR, Doc. No. 7-7 at PageID 312).) But this examination was performed on May 31, 2021 – almost two months before the SSI application date. (AR, Doc. No. 7-7 at PageID 312.) The ALJ next cited to an August 19, 2021 examination documented in Exhibit 8F. (Decision, Doc. No. 7-2 at PageID 48 (citing AR, Doc. No. 7-7 at PageID 523).) But this examination occurred when Plaintiff presented to an emergency room with complaints of chest pain, headache, and lightheadedness, which he attributed to possible poisoning or drug ingestion. (AR, Doc. No. 7-7 at PageID 521.) The attending medical providers therefore had little reason to perform or document a detailed musculoskeletal examination. (*Id.* at PageID 523.)

Finally, the ALJ cited to the November 2021 consultative physical examination documented in Exhibit 3F. (Decision, Doc. No. 7-2 at PageID 48 (citing AR, Doc. No. 7-7 at PageID 373-80).) It is true that consultative physician Dr. Swedberg documented normal physical examination findings during that examination. (AR, Doc. No. 7-7 at PageID 373-80.) However as discussed above, Dr. Swedberg opined that Plaintiff was capable of performing a "moderate amount" of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. (AR, Doc. No. 7-7 at PageID 380.) The ALJ ignored this opinion, as well as Dr. Swedberg's comments in his report that support the opinion, when he cited Dr. Swedberg's examination findings. For example, Dr. Swedberg noted that Plaintiff had a five-year history of shortness of breath, used an Albuterol inhaler, and reported that his shortness of breath caused difficulty with

21

climbing stairs, "walking up grades," and walking on even terrain for more than two to three blocks. (*Id.* at PageID 378.)

Moreover, the ALJ's citation to Dr. Swedberg's examination in support of his conclusion that the consultants' opinions were "inconsistent with the remainder of the medical evidence" conflicts with the ALJ's conclusion that the consultants' opinions were "supported by the doctors' review of the medical record available to them at the time of the rendering of their opinion." (Decision, Doc. No. 7-2 at PageID 48.) The consultants reviewed Dr. Swedberg's examination findings and opinion when they provided their opinions. (AR, Doc. No. 7-3 at PageID 85, 88, 96.) As noted above, the consultants noted that Dr. Swedberg's opinion was "somewhat persuasive" but concluded that additional environmental limitations were warranted to account for Plaintiff's COPD. (*Id.* at PageID 88, 96.) And so the ALJ's conclusion about the supportability of the consultants' opinions logically means that the consultants' opinions ***are supported*** by Dr. Swedberg's findings. Dr. Swedberg's findings therefore cannot also be used to discount the consultants' findings.

In his consistency analysis, the ALJ also ignored other significant evidence supporting the consultants' opinions that Plaintiff's physical impairments were severe. For example, the ALJ ignored the August 2022 medical record from Samaritan Homeless Clinic that documented Plaintiff's treatment for complaints of hip pain, as well as decreased right hip range of motion. (AR, Doc. No. 7-7 at PageID 491-92.) The ALJ also failed to consider that the November 2021 hip x-rays and CT scan of the abdomen and pelvis showed chronic osteonecrosis of the right femoral head with moderate

22

osteoarthritis of the right hip, and that October 2022 hip x-rays showed chronic degenerative changes of the right hip joint. (AR, Doc. No. 7-7 at PageID 382, 575, 610.)

Additionally, the ALJ failed to consider the consistency of the consultants' opinions with the opinions of consultative physician Dr. Swedberg. As discussed above, Dr. Swedberg opined that Plaintiff was capable of performing a "moderate amount" of— and so was not unlimited in the abilities of—sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. (AR, Doc. No. 7-7 at PageID 380.) Dr. Swedberg's opinion is consistent with the consultants' opinion that Plaintiff's hip condition and COPD were severe, but the ALJ ignored that consistency.

The Court recognizes that the ALJ need not discuss each and every piece of evidence and finding in the record. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole" must show he "implicitly resolved the conflicts in the evidence." *Id.* Here, the ALJ's failure to acknowledge both the significant evidence that supports Plaintiff's physical complaints and the consistency between the opinions of the state agency consultants and Dr. Swedberg leads the Court to conclude that the ALJ did not resolve conflicts in the evidence, especially when considering the *de minimis* standard at Step Two. *Higgs*, 880 F.2d at 862. Further, the ALJ's apparent failure to consider evidence that contradicts his conclusions signifies an impermissibly selective review of the record. *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record"); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in

23

parsing the various medical reports")). Thus, the ALJ's conclusions regarding the consultants' findings that Plaintiff's physical impairments are severe are unsupported by substantial evidence. This constitutes reversible error and provides another reason why the case will be remanded.

> **3.    The ALJ's evaluation of consultative physician Dr. Swedberg's opinion is unsupported by substantial evidence.**

The ALJ stated that he was "only partially" persuaded by Dr. Swedberg's opinion that Plaintiff was capable of performing "a moderate amount" of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. (Decision, Doc. No. 7-2 at PageID 47.) He reasoned that Dr. Swedberg's opinion was "not completely supported" by the "completely normal" physical examination that Dr. Swedberg documented. (*Id.*) The ALJ also reasoned that the opinion was "inconsistent with the remainder of the medical evidence." (*Id.*) Again, the ALJ therefore arguably explained his consideration of the supportability and consistency factors pursuant to 20 C.F.R. § 416.920c(b)(2), but the ALJ's conclusions regarding the consistency factor are unsupported by substantial evidence.

In support of his conclusion that Dr. Swedberg's opinion was inconsistent with the remainder of the medical evidence, the ALJ only cited to two physical examinations documented in Exhibits 2F and 8F—the same two examinations that he cited when discounting the opinions of the state agency medical consultants. (Decision, Doc. No. 7-2 at PageID 47-48 (citing AR, Doc. No. 7-7 at PageID 312, 523).) For the same reasons discussed above, these examinations do not substantially support the ALJ's conclusions.

Additionally, similar to the analysis of the consistency factor of the state agency medical consultants' findings, the ALJ ignored other significant evidence that arguably supports Dr. Swedberg's opinion—and that supports a conclusion that Plaintiff's physical impairments are severe. The ALJ failed to consider the x-rays or the CT scan that showed osteonecrosis and osteoarthritis of the right hip. (*See* AR, Doc. No. 7-7 at PageID 382, 491-92, 575, 610.) The ALJ also failed to consider the consistency of Dr. Swedberg's opinion with the opinions of the state agency medical consultants.

The ALJ's failure to acknowledge the significant evidence that supports Plaintiff's physical complaints, as well as the consistency of Dr. Swedberg's opinion with the opinions of the state agency medical consultants, leads the Court to conclude that the ALJ did not resolve conflicts in the evidence, especially when considering the *de minimis* standard at Step Two. *Higgs*, 880 F.2d at 862. Further, the ALJ's apparent failure to consider evidence that contradicts his conclusions signifies an impermissibly selective review of the record. *See Gentry*, 741 F.3d at 723; *Germany-Johnson*, 313 F. App'x at 777 (6th Cir. 2008). Thus, Court concludes that the ALJ's analysis of the consistency factor with respect to Dr. Swedberg's opinion is not supported by substantial evidence. This, too, constitutes reversible error and provides another reason why the case will be remanded.

## V.    REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

The Court is unpersuaded by Plaintiff's request that the Court remand this case and immediately award benefits. (SE, Doc. No. 8 at PageID 631; Reply, Doc. No. 11 at PageID 656.) Plaintiff asserts that the evidence of disability is "uncontroverted" because the state agency medical consultants limited Plaintiff to a reduced range of light work, and the ALJ acknowledged at the December 2022 hearing that "limiting Plaintiff to light exertion work would result in an 'obvious' finding of disability under the Medical Vocational Guidelines secondary to Plaintiff's age and work history." (SE, Doc. No. 8 at PageID 631 (citing AR, Doc. No. 7-2 at PageID 81).) But there is no requirement that the ALJ must adopt the consultants' opinions—or any other medical opinion—upon remand. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (an ALJ is required to consider medical opinion evidence when determining the RFC, but he is not required to adopt them or adopt any such findings verbatim). Instead, "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe*, 342 F. App'x at 157 (citing 20 C.F.R. § 404.1546(c)). Additionally, although the ALJ stated during the hearing that a light RFC would result in a finding of disability pursuant to the Medical-Vocational guidelines, the ALJ posed a hypothetical question to the vocational expert that limited Plaintiff to a reduced range of medium exertion. (AR, Doc. No. 7-2 at

PageID 80.) The vocational expert responded that an individual of Plaintiff's age, education, and work experience would be able to perform jobs in the national economy with those limitations. (*Id.*) Accordingly, the Court finds that a judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176.

Instead, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to Plaintiff's physical impairments and the opinions of the state agency medical consultants and consultative physician Dr. Swedberg, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for SSI should be granted.

**IT IS THEREFORE ORDERED THAT**:

1.   Plaintiff's Statement of Errors (Doc. No. 8) is GRANTED;

2.   The Court REVERSES the Commissioner's non-disability determination;

3.   No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.   This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.   This case is terminated on the Court's docket.

                                                     *s/Caroline H. Gentry*
                                                     Caroline H. Gentry
                                                     United States Magistrate Judge